The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>KALVINN JAY GARCIA,<br><br>Defendant. | NO. CR21-12 JCC<br><br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

On February 24, 2020, the defendant Kalvinn Jay Garcia set fire to the contents of a dumpster behind Queer/Bar, a Seattle bar located in Capitol Hill that caters to the LGBTQ community. Mr. Garcia intentionally selected the dumpster behind Queer/Bar and looked up and saw that the bar was occupied when lighting the fire. The fire forced the bar to evacuate and emergency personnel to respond and impacted the local LGBTQ community for weeks thereafter. When Mr. Garcia was caught and arrested, he told police he "couldn't take these cross-dressing fucking f*gs," among other loathsome comments, and later told a different witness that his intent in setting the fire was to trap and hurt the people in the bar.

Hate crimes like Mr. Garcia's have an outsized impact on the victim and the community. Such crimes can, as Mr. Garcia's did, threaten lives and cause panic in the moment. Luckily, nobody was injured as a result of either the fire or the resulting evacuation of the bar. But the effects of such crimes linger long after the crime itself.

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  They instill fear in entire communities.  And they can traumatize and impact the members
2  of the targeted community for weeks, months, or years after.
3        This case also presents significant mitigating circumstances, however.  ███
4  ████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████
6  ██████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████
9        Likely for these reasons, Mr. Garcia's attempted arson had little evidence of
10 lengthy premeditation.  For example, Mr. Garcia set the fire in the alley next to the East
11 Precinct of the Seattle Police Department, which is not the location one would expect a
12 premeditated arson to occur.  Mr. Garcia's arson attempt was also unsophisticated.  He lit
13 a fire in a metal dumpster, using mostly the dumpster's contents, abutting a brick exterior
14 wall of the bar.  Given the metal dumpster and brick wall, the Seattle Fire Department
15 explained that it was unlikely, though not impossible, for the fire to have spread into the
16 adjoining bar.
17       Mr. Garcia's ████████████████████████ are mitigating in this case.
18 Unfortunately, in part because of those same issues, Mr. Garcia engaged in a six-month
19 stretch of escalating, dangerous crimes in 2020 before he was detained.  In February
20 2020, he committed the instant offense.  In June 2020, Mr. Garcia broke a store window
21 and then entered the store armed with a hatchet and lighter fluid.  Two weeks later, he
22 approached a person's car, swung a hammer, and broke the car's taillight.  Garcia said he
23 mistakenly thought the car belonged to his ex-girlfriend and that he smashed the car
24 because she is a "fucking stupid c***."  A month later, he set fire to the Sedro-Woolley
25 School District Administrative Office, using an accelerant.  He said he started the fire
26 because he was upset that a passing motorist had "flipped him off."  The details of these

SENTENCING MEMORANDUM  
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

crimes have the clear fingerprints of Mr. Garcia's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But they also reflect the danger Mr. Garcia poses. The government's recommendation in this case is thus based primarily on the need to protect the public.

The government agrees with the Probation Office's calculation of the guidelines range, which is contained in the PSR, as 77 to 96 months' imprisonment. The U.S. Probation Office has recommended 48 months' imprisonment in this case. Weighing the factors set forth above—and recognizing that this is not an easy case—the government recommends that this Court sentence Mr. Garcia to 77 months' imprisonment, to be followed by three years' supervised release.[1]

## FACTUAL BACKGROUND OF THE OFFENSE

The following facts of the instant offense are taken from the plea agreement and pre-sentence investigation report (PSR). *See* Dkt. 31 at PSR ¶¶ 8-10.

At approximately 9 p.m. on February 24, 2020, Mr. Garcia intentionally set fire to the contents of a dumpster in the alley directly behind Queer/Bar, an inclusive bar and performance space in Capitol Hill, Seattle, that is known as a bar for the queer community.

On the night of the incident, approximately one hundred people were in Queer/Bar, half of whom were attending a private party on the second floor. Mr. Garcia entered the alley near 11th Avenue, walked past several dumpsters in the alley, and stopped when he reached the dumpster directly behind Queer/Bar. The dumpster was pushed up against the exterior wall of the building and directly below the private party at Queer/Bar. Bright pink lights, people singing, and loud music emanated from that room and were visible and audible from the alley. Mr. Garcia looked up at the party inside

---

[1] The government has filed a motion to seal this unredacted memorandum, which contains the sensitive medical and mental health information of the defendant.

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Queer/Bar several times as he set the fire.  The fire ignited almost instantaneously,
2  engulfing the contents of the dumpster in flames that rose over three to four feet in the air
3  above the top of the dumpster, against the brick wall of the building.
4        Law enforcement located and arrested Mr. Garcia within minutes after he started
5  the fire and advised him of his *Miranda* rights.  During a search incident to his arrest,
6  officers located a pocket lighter on Mr. Garcia's person.  During an interview with a
7  detective of the Seattle Police Department, Mr. Garcia admitted setting the fire and
8  targeting Queer/Bar because it angered him to see a sign that said "queer."  When asked
9  to tell the detective about the fire, Mr. Garcia said, "I think it's wrong that we have a
10 bunch of queers in our society" and it "makes me sick to see all these people gathered
11 up" because "God made you to be a male and you abuse it to be a female."  Mr. Garcia
12 reported he "couldn't take these cross-dressing fucking f*gs."
13       A few weeks after setting the fire, and shortly after his release from custody, Mr.
14 Garcia approached a stranger, K.C., at a bus stop and asked to use K.C.'s phone.  Mr.
15 Garcia told K.C. that he had just been released from jail for setting a fire near the back
16 door of a club and that his intent in setting the fire was to trap and hurt the people inside.
17 Mr. Garcia also told K.C. that he "hates gays."

## SENTENCING RECOMMENDATION

### A.  Aggravating factors

In at least three ways, this is an aggravated hate crime that would ordinarily merit a very lengthy term of incarceration.

First, the defendant used fire, attempted to commit arson, and created an enormous risk of injury to others in the targeted bar.  *See* 18 U.S.C. § 3553(a)(1) and (a)(2)(A) (nature and circumstances and seriousness of the offense).  There is, of course, the risk, even if small, that the fire might have spread to the building itself, which could have trapped up to a hundred individuals in closely cramped quarters.  Such a tragedy would

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

almost certainly have led to loss of life. Yet that was Mr. Garcia's admitted intent in setting the fire: to trap and hurt the people inside. Even if the fire itself had not spread through the brick exterior of the back of the bar, there was a secondary risk that those in the bar might panic upon seeing the fire behind the bar, causing injuries to patrons as they attempted to escape. It is because of these serious threats to life that fire and arson pose that Congress saw fit to impose a mandatory consecutive sentence of 10 years' imprisonment on those who use fire to commit a felony. *See* 18 U.S.C. § 844(h).

Second, there is unusually specific evidence in the form of Mr. Garcia's admissions of hatred of the LGBTQ community and of the patrons within the Queer/Bar establishment he attempted to burn down. Similarly, there is unusually specific evidence of his intent to cause them harm. In some hate crimes cases, such evidence is circumstantial, and the defendant's intent is inferred from his writings or social media posts. Not so here. At least on the surface, that makes this a more brazen hate crime than some.

Third, the defendant followed this attack with a series of attacks or incidents that involving escalating, erratic behavior from the defendant and a risk of harm to others. *See* 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant). As the PSR reflects, prior to 2020, Mr. Garcia had repeated arrests for theft or trespass for which he served small terms of custody (between 1 and 10 days of custody). PSR ¶¶ 30-37. In 2020, however, when he was 22 years old, Mr. Garcia's behavior escalated significantly. In February 2020, he set the arson to which he has pled guilty in this case. He was released from custody in March 2020, and was arrested again in June 2020 for theft. But the PSR's factual description of that charge is more concerning: he was found in the store, armed with a hatchet, and possessing a large container of lighter fluid. PSR ¶ 38. He was arrested again on June 17, 2020, after stealing a jacket from a Fred Meyer's grocery store and smashing the lights of a nearby vehicle with a hammer. PSR ¶ 39. He

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

told responding officers he smashed the light because he thought it was his ex-girlfriend's. *Id.* He was arrested again on July 26, 2020, after attempted to set fire to a school (when it was empty) using some kind of accelerant, likely alcohol. PSR ¶ 40. Mr. Garcia told officers he did this because he was angry a passing motorist had "flipped him off." *Id.* Mr. Garcia's ongoing pattern of violent or threatening conduct posed serious risks of harm to the community in 2020.

### B.    Mitigating factors

However, there are other aspects of this crime, intertwined with those three aggravating factors above, that make it a more complicated story.



SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4     In any event, it is clear Mr. Garcia has not been on ▬▬▬▬ medication, and
5 certainly not consistently, when out in the community, or when committing these
6 offenses. The chief concern of the government is that he will stop taking medication
7 once released and otherwise revert to the same state in which he committed his crimes in
8 2020.
9     The second mitigating factor is the defendant's circumstances at the time of this
10 offense. He was 22 years old, and had been apparently homeless for approximately a
11 year. He has no real employment history, and it appears few friends or family to rely on.
12 And in the years leading up to this offense, he was abusing alcohol and
13 methamphetamine, the former of which is obvious from the narrative descriptions of his
14 2020 offenses, most of which involve him either being drunk or having alcohol with him
15 during the offense.
16     Moreover, in February 2020, the defendant appears to have been starting a mental
17 health spiral dangerous to both himself and others. In addition to the crimes described
18 above committed from June-July 2020, in the months after the arson charged here, Mr.
19 Garcia twice ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Ex. A at 4.
20
21
22
23
24
25
26

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

*Id.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

His other law enforcement contacts from the summer of 2020—which are in addition to the three crimes from June-July 2020 noted above—confirm that he was suffering from a mental health crisis during this period:

- On April 26, 2020, Mr. Garcia reported to police that he was ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.
- On May 25, 2020, officers responded to a burglary in progress and found Mr. Garcia, who stated he was homeless, had pneumonia, ▇▇▇▇▇, and had been looking for a warm location to stay.
- On June 22, 2020, an officer found him swinging an axe in the parking lot of a Fred Meyer retail location. Mr. Garcia said he had just purchased the axe and was attempting to reach a crisis center due to ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇. He was transported to a crisis center.

### C.     The Government's recommendation

The mitigating factors above do not alter, and cannot diminish, the very real, grave danger posed by the defendant's conduct to the patrons of Queer/Bar. Secretly starting a massive fire behind a packed bar involves a significant risk to life; even the proverbial false shout of "fire!" in a crowded indoor space is dangerous enough, due to the risk of crowd panic, to warrant criminalization. On top of that risk, the defendant's statements were abhorrent, and his conduct impacted not only the particular victims of this crime but also the broader LGBTQ community in Capitol Hill.

However, those same strong mitigating factors—▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—do complicate the picture of Mr. Garcia's conduct in 2020. On the one hand, with the full context, Mr.

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Garcia's crimes in 2020 appear to have been driven in significant part by his ▮▮▮▮
2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, alcoholism or addiction, and life circumstances.

On the other hand, for the same reasons, Mr. Garcia's conduct was escalating and dangerous, involving repeated property damage, use of a hammer, another arson attempt, and being caught carrying a hatchet and lighter fluid during a burglary. His second arson attempt, for example, appears to have been almost arbitrarily targeted at a school, for little or no reason. The defendant identified a passing motorist as having aggravated him, but he was dropped off that morning by local police after being found in a residential garage. It appears that he started a fire at the school for no real reason at all, or due to some perceived slight. Apparently equally arbitrary was his smashing of a random victim's car's taillight after shoplifting at Fred Meyer's. His conduct in this case was not isolated, but part of a pattern of escalating and dangerous behavior.

In sum, the government believes that the seriousness of the offense and the need to protect the public from the defendant are the factors that weigh in favor of a longer custodial term. The defendant's two attempted arsons could have killed others. And that the defendant was found in a business with a hatchet and large container of lighter fluid before anyone was harmed is a stroke of good fortune. Moreover, his prior stints on supervision have not curbed his behavior.

This is not an easy case, and the factors above are not easily weighed. In the absence of a realistic, lengthy inpatient commitment alternative for Mr. Garcia, the government recommends that the Court sentence the defendant to 77 months' imprisonment.

Finally, the Court should impose three years of supervised release. The Court should impose the conditions recommended by Probation with the following additions:

> *Defendant shall participate as directed in a mental health program approved by the United States Probation Office and follow all recommendations of the*

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*treatment provider to include psychotropic medications. However, the Defendant's refusal to take psychotropic medication prescribed by such a treatment provider shall not be a violation of supervised release unless the Court, after affording the Defendant due process, determines and orders that the Defendant shall be compelled to take such medication, and the Defendant thereafter violates the Court's order. The defendant must contribute towards the cost of any programs, to the extent the defendant is financially able to do so, as determined by the U.S. Probation Officer.*

*Defendant shall submit to psychiatric hospitalization if directed by his mental health treatment provider for a period of 72 hours, or less if so recommended by his mental treatment provider. Defendant understands that an appropriate state or local court may order him to be committed for a longer period of time.*

Although the protection afforded by these conditions is not perfect, they nonetheless should be imposed to better minimize the risk that Mr. Garcia poses to the public.

DATED this 26th day of September, 2023.

Respectfully submitted,

*s/ Thomas M. Woods*
THOMAS M. WOODS
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101

SENTENCING MEMORANDUM
*United States v. Garcia,* CR21-12-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970